UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS R.,[1] | Case No. 2:23-cv-02177-MAR |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| KILOLO KIJAKAZI, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Curtis R. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his application for Title XVI Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons stated below, the Commissioner's decision is **AFFIRMED**.

///

///

///

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

# **PROCEDURAL HISTORY**

On December 30, 2020, Plaintiff protectively filed an application for SSI, alleging a disability onset date of February 9, 2017. Administrative Record ("AR") at 10. Plaintiff's application was denied initially on April 23, 2021, and upon reconsideration on September 2, 2021. Id. On October 28, 2021, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Id.

On March 30, 2022, Plaintiff telephonically appeared with counsel before an ALJ and testified at a hearing concerning his application. AR at 10, 38–49. A vocational expert ("VE") also testified. AR at 10, 45–47. On May 3, 2022, the ALJ issued a decision denying Plaintiff's application for SSI. AR at 20. Plaintiff filed a request with the Appeals Council to review the ALJ's decision. AR at 1. On February 13, 2023, the Appeals Council denied review. AR at 1–5.

On March 23, 2023, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1. On July 26, 2023, Plaintiff filed their opening brief. Dkt. 12. Defendant filed a brief in opposition. Dkt. 16. Thus, the matter stands submitted.

# II.

# **PLAINTIFF'S BACKGROUND**

Plaintiff was born on April 10, 1968. AR at 19. He was forty-nine (49) years old at the time his disability began on February 9, 2017, and fifty-four (54) years old at the time of the administrative hearing on March 30, 2022.[2] AR at 19, 210. Plaintiff completed tenth grade and had not worked in the fifteen (15) years prior to the hearing. AR at 40. In his application, he alleged disability based on the following:

---

[2] Accordingly, Plaintiff was considered a "younger person" on his disability on-set date and "an individual closely approaching advanced age" at the date of his hearing. AR at 19, 210; see Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1069 (9th Cir. 2010) (explaining that social security regulations define "younger persons" as "under age 50" and "persons of advanced age" as "55 or older"); 20 C.F.R. § 404.1563(c)–(d).

1 "Blind or low vision; Major Depressive Disorder w/ severe Psychotic Features; High
2 Blood Pressure; High Cholesterol." AR at 51, 71, 111, 230.

### III.
### **STANDARD FOR EVALUATING DISABILITY**

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423 (d)(1)(a); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide whether a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[3]
4. Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

---

[3] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. 20 C.F.R. § 416.920(e); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

3

|    |                                                                                   |
|----|-----------------------------------------------------------------------------------|
| 1  |     5. Is the claimant able to do any other work? If not, the claimant is found |
| 2  |        disabled. If so, the claimant is found not disabled. |

See Tackett, 180 F.3d at 1098–99; see also 20 C.F.R. §§ 404.1520(b)–(g)(1), 416.920(b)–(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953–54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); Tackett, 180 F.3d at 1098–99, 1100; Reddick, 157 F.3d at 721.

## IV.
## THE ALJ'S DECISION

**A.  STEP ONE**

At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity since December 30, 2020, the application date[.]" AR at 12.

**B.  STEP TWO**

At step two, the ALJ found that Plaintiff had "the following severe impairments: depression; and anxiety[.]" AR at 12.

**C.  STEP THREE**

At step three, the ALJ found that Plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" AR at 14.

### D. RFC DETERMINATION

The ALJ found that Plaintiff had the following RFC:

> [T]o perform full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple, routine, and repetitive tasks, but not at production rate of pace, such as assembly line work; he can make simple work-related decisions; he can occasionally manage changes in the work setting; he can occasionally make decisions; and he can have occasional contact with supervisors and coworkers, but he must never have contact with the general public.

AR at 16.

### E. STEP FOUR

At step four, the ALJ found that "[t]ransferability of job skills [was] not an issue because the claimant does not have past relevant work (20 CFR 416.968)." AR at 19.

### F. STEP FIVE

The ALJ found that "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." AR at 19. With the assistance of the vocational expert's testimony, the ALJ found that Plaintiff could perform the following medium, unskilled jobs: (1) cleaner II (DOT No. 919.687-014), (2) Furniture cleaner (DOT No. 709.687-014), and (3) sweeper (DOT No. 389.683-010). AR at 20. Accordingly, the ALJ concluded that Plaintiff was not disabled. Id.

## V.

## DISPUTED ISSUES

The parties present the following disputed issues:

(1) Whether the Commissioner failed to adequately evaluate Plaintiff's claim of being illiterate and a slow learner under SSR 16-3p?
(2) Whether the Commissioner failed to adequately consider the impact of Plaintiff's obesity on his physical conditions as required by Social Security Ruling 19-2p?

See Dkts. 12 at 1; 16 at 2.

///

5

## VI.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins, 466 F.3d at 882). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court . . . may not affirm simply by isolating a 'specific quantum of supporting evidence'" (quoting Robbins, 466 F.3d at 882)). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720–21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record"), superseded on other grounds 20 C.F.R. § 404.1502(a).

The reviewing court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential

6

to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

# VII.

# **DISCUSSION**

## A. THE ALJ ADEQUATELY EVALUATED PLAINTIFF'S OBESITY AND THE IMPACT IT HAD ON HIS PHYSICAL CONDITIONS

### 1. ALJ decision

> The undersigned finds that the claimant's medically determinable impairment of obesity is nonsevere because, alone or in combination, it does not significantly limit the claimant's physical or mental ability to do basic work activities (see SSR 19-2p). In considering the claimant's weight over time, the claimant's body mass index shows a consistent pattern of obesity as evidenced by the claimant's body mass index (BMI) of 31.72 (Ex. 13F/156). As required by SSR 19-2p, the undersigned has considered all evidence from all sources, all symptoms that could limit functioning, and any potential functional limitations in the claimant's ability to do basic work activities resulting from obesity and from any other physical or mental impairments. The undersigned finds that the claimant's obesity, alone or in combination, does not significantly limit the claimant's physical or mental ability to do basic work activities. Therefore, the claimant's obesity is a nonsevere impairment.

AR at 12–13.

### 2. Applicable Law

While obesity is no longer listed among the Listing of Impairments, "the functional limitations caused by the [medically determinable impairment] of obesity, either alone or in combination with another impairment(s), may medically equal a listing." Social Security Ruling ("SSR") 19-2p, 2019 WL 2374244, at *2 (May 20, 2019).[4] "In evaluating obesity to determine a claimant's RFC, the ALJ's assessment

---

[4] On May 20, 2019, the SSA rescinded and replaced its existing social security ruling governing obesity, SSR 02-1p, with SSR 19-2p. See SSR 02–1p, 2002 WL 34686281; SSR 19-2p, 2019 WL 2374244, at *5 n.14. The SSA explained that SSR 19-2p applies "to new applications filed on or after the applicable date of the SSR and to claims that are pending on or after the applicable date." 2019 WL 2374244, at *5 n.14 (emphasis added). Because Plaintiff's application was pending on May 20, 2019, and the ALJ hearing in this case did not occur until March 30, 2022, the new social security ruling, SSR 19-2p, applies here.

1  'must consider an individual's maximum remaining ability to do sustained work
2  activities in an ordinary work setting on a regular and continuing basis.'" Burch v.
3  Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) (discussing SSR 02–1p, 2002 WL
4  34686281 (September 12, 2002)). "As with other impairments, the ALJ should
5  explain how [they] determined whether obesity caused any physical or mental
6  impairments." Id.

### 3. Analysis

Plaintiff asserts that the ALJ's "analysis is inadequate since it fails to discuss the nature, severity and functional effects [of obesity] as required under Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003)." Dkt. 12 at 7. However, this case is distinguishable from Celaya, where the ALJ failed to either explicitly or implicitly determine the effect of obesity on the claimant's ability to work, even in conjunction with other impairments. 332 F.3d at 1182; see Tsosie v. Berryhill, 717 Fed. Appx. 680, 681 (9th Cir. 2017). Here, unlike in Celaya, the ALJ's opinion explicitly discussed Plaintiff's obesity at step two, when they found it to be non-severe, either alone or in combination with other impairments. See AR at 12–13. Though the ALJ did not explicitly discuss Plaintiff's obesity again in formulating the RFC, it appears that the ALJ may have implicitly considered potential limitations from Plaintiff's obesity. At the hearing, Plaintiff's counsel argued that "due to obesity [Plaintiff] would be limited to medium work at best . . . ." AR at 39. Despite finding that Plaintiff had the RFC to perform work at all exertional levels, the ALJ, relying on the VE's testimony, only identified jobs in the medium exertion level that Plaintiff would be able to perform. AR at 19–20.

In any case, here Plaintiff has failed to identify a specific functional limitation caused by their obesity that the ALJ failed to account for. Absent any indication that the ALJ failed to account for particular obesity-related evidence or limitations, Plaintiff fails to demonstrate any error. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (rejecting an invitation to find that the ALJ failed to

1  account for a claimant's injuries "in some unspecified way" when the claimant did not
2  detail what other limitations flow from the evidence of his injuries, beyond the
3  limitations already listed in the RFC); Hoffman v. Astrue, 266 Fed. Appx. 623, 625
4  (9th Cir.2008) (ALJ's failure to consider plaintiff's obesity in relation to residual
5  functional capacity proper because plaintiff failed to show how obesity in
6  combination with another impairment increased severity of limitations); Tsosie, 717
7  Fed. Appx. at 682 (affirming ALJ's consideration of claimant's obesity where claimant
8  failed to show that ALJ "ignored any relevant evidence of obesity that could have
9  affected his [RFC] determination"); Burch, 400 F.3d at 684 ("[Plaintiff has not set
10 forth, and there is no evidence in the record, of any functional limitations as a result
11 of her obesity that the ALJ failed to consider."); Maria C. R. v. Kijakazi, No. EDCV
12 21-1788-RAO, 2022 WL 16556019, at *5 (C.D. Cal. Oct. 31, 2022) (same; citing
13 Burch, 400 F.3d at 684).  A such, the ALJ adequately evaluated Plaintiff's obesity as it
14 was presented and the impact it had on Plaintiff's physical condition.

**B.   THE ALJ DID NOT ERR IN EVALUATING PLAINTIFF'S LITERACY**

Here, it is not entirely clear whether Plaintiff is arguing that the ALJ should have considered Plaintiff's illiteracy as a separate impairment or that the ALJ erred in finding that Plaintiff had a "limited education" for the purposes of determining what jobs are available for Plaintiff to perform in the national economy.  Dkt. 12 at 5.

**1.   Applicable law**

"A claimant is not per se disabled if he or she is illiterate," Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001), however, a claimant's educational level (including whether a claimant is illiterate) is considered at step five of the sequential analysis.  20 CFR § 404.1564(b)(1).  Pursuant to 20 CFR § 404.1564, the Social Security Administration defines "illiteracy" as "the inability to read or write."  20 CFR § 404.1564(b)(1); see also Sanchez v. Colvin, No. CV 14-03641-JEM, 2014 WL 6695501, *4 (C.D. Cal. Nov. 26, 2014) ("Literacy or education level is a vocational

9

factor relevant only to the step five inquiry and not to the existence of a disability.") (citing Silveira v. Apfel, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000)).  A person is considered illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name.  Generally, an illiterate person has had little or no formal schooling."  20 CFR § 404.1564(b)(1).  By contrast, "limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs."  20 CFR § 404.1564(b)(3).  The Social Security Administration generally considers "that a 7th grade through the 11th grade level of formal education is a limited education."  Id.  Although a claimant's formal schooling is not dispositive when determining educational level or literacy, it is a factor to be considered.  20 CFR § 404.1564(b).

**2.     Analysis**

    **a.     The ALJ did not err by failing to consider Plaintiff's alleged illiteracy as an impairment**

The ALJ only focused on Plaintiff's education as a vocational factor in step five; however, Plaintiff in his Petition refers to "symptoms" and "diagnosis" of illiteracy, and uses other language implying that the ALJ failed to consider Plaintiff's subjective complaints of illiteracy at step two when analyzing Plaintiff's alleged disabilities.  Dkt. 12 at 4.  To the extent Plaintiff is asserting the ALJ should have evaluated his asserted "illiteracy and learning disability" sua sponte as a separate impairment, and therefore considered Plaintiff's testimony regarding the "symptoms" of his illiteracy, Plaintiff's argument fails.

Here, Plaintiff's application only claimed disability based on "Blind or low vision; Major Depressive Disorder w/ severe Psychotic Features; High Blood Pressure; [and] High Cholesterol."  AR at 51, 230.  Indeed, it was not until Plaintiff's March 2022 hearing when the ALJ asked Plaintiff about his education that Plaintiff

1  asserted he was illiterate. AR at 40. However, at no time did Plaintiff, who was
2  represented by counsel at the hearing, argue that the illiteracy should be assessed as a
3  separate impairment or basis for a finding that Plaintiff was disabled. Given that
4  Plaintiff did not allege that illiteracy was a disabling impairment in his applications or
5  argue the issue before the ALJ, the ALJ's failure to consider Plaintiff's alleged illiteracy
6  as an impairment does not constitute error. See Greger v. Barnhart, 464 F.3d 968,
7  973 (9th Cir. 2006) (finding no error where ALJ did not consider plaintiff's PTSD as a
8  basis for disability because plaintiff, represented by counsel, failed to raise claim
9  PTSD as a basis for disability prior to his appeal, and had therefore waived the issue);
10 Bowser v. Comm'r of Soc. Sec., 121 F. App'x 231, 236–37 (9th Cir. 2005) (finding
11 that the ALJ did not err in failing to account for the effects of an impairment when
12 the claimant did not allege the impairment in her disability application or raise the
13 issue before the ALJ, and noting "[t]o hold otherwise under these circumstances
14 would be tantamount to eviscerating Claimant's burden of showing the presence of a
15 medically determinable impairment"); see also Price v. Berryhill, No. 16–CV–04624–
16 NJV, 2017 WL 4224923, at *6 (N.D. Cal. Sept. 22, 2017) ("Plaintiff has provided the
17 court with no authority stating that when determining severe impairments or making
18 the RFC assessment, the ALJ must consider conditions not identified in the
19 application for benefits. Plaintiff has therefore not shown legal error in the ALJ's
20 failure to do so in this case.").

21       **b.    The record substantially supports the ALJ's determination**
22            **that Plaintiff was not illiterate**

23       Plaintiff appears to argue that, in determining Plaintiff's education level, the
24 ALJ should have considered him illiterate under 20 C.F.R. § 404.1564(b)(1), which
25 states that a person is illiterate "if the person cannot read or write a simply message
26 such as instructions or inventory lists even though the person can sign his or her
27 name." However, the record does not support that Plaintiff would qualify as illiterate
28 within this definition. The record shows that Plaintiff completed tenth grade with at

1 least the last two (2) years in special education. AR at 231, 352, 376. In his
2 application Plaintiff asserted that he could read and write "simple messages such as a
3 shopping list or short and simple note." AR at 231, 260, 262. Additionally, while
4 treatment notes mention that Plaintiff was illiterate, most of the notes do not define
5 the term or describe what parameters were used to measure Plaintiff's literacy. AR at
6 403–404, 426, 429, 431, 433, 455, 474, 678, 757–760, 984, 1000. In fact, the one time
7 a medical note does discuss Plaintiff's literacy in-depth, the note states: "Literacy level:
8 illiterate . . . Plaintiff has a fifth grade reading level and would like to improve it."
9 AR at 479. Notably, this description would not meet the definition of illiterate under
10 20 C.F.R. § 404.1564(b)(1). Ultimately, on this record, substantial evidence supports
11 the ALJ's finding that Plaintiff was not illiterate as defined by 20 CFR
12 § 404.1564(b)(1).[5]

### C. ANY ERROR WAS HARMLESS

A decision of the ALJ will not be reversed for errors that are harmless. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citing Burch, 400 F.3d at 679). Legal errors are harmless if they are inconsequential to the nondisability decision. Id. at 1055. Here, as discussed above, Plaintiff's counsel argued at the hearing that "due to obesity [Plaintiff] would be limited to medium work at best . . . ." AR at 39. The VE also opined that Plaintiff could perform three (3) jobs at the medium exertion level that "do not require any reading." Id. at 46. As noted above, the ALJ cited these specific jobs in finding that Plaintiff could perform work that exists in significant numbers in the national economy and therefore was not disabled. Accordingly, even assuming that the ALJ found Plaintiff to be illiterate and found Plaintiff's obesity limited him to performing medium work, as counsel argued, the ALJ would likely have still found Plaintiff not disabled, given that the ALJ already

---

[5] Beyond alleging he is illiterate; Plaintiff does not explicitly argue that the ALJ's finding that Plaintiff had a "limited education" was erroneous. As such, this Court will not discuss whether this specific finding was supported by the record.

12

found Plaintiff could perform jobs requiring only medium work that did not require reading.[6] As such, any error from failing to find Plaintiff illiterate or more explicitly factor Plaintiff's obesity in the RFC was harmless. Accordingly, reversal is not warranted in Plaintiff's case.

## VIII.
## RECOMMENDATION

For the foregoing reasons, **IT IS ORDERED** that judgment be entered **AFFIRMING** the decision of the Commissioner. **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated:  November 3, 2023

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

---

[6] Plaintiff's counsel did ask the VE about jobs with exertion levels more restrictive than medium; the VE testified that, at a level more restrictive then medium, an individual who could not read would have no jobs available. AR at 46. However, Plaintiff does not now argue that the ALJ should have limited him to light or sedentary work. In fact, as noted above, Plaintiff has not identified any specific functional limitations implicated by his illiteracy or obesity that the ALJ failed to account for in constructing Plaintiff's RFC.

13